88]) to have taken the deposition of the witness de bene esse. Nor is it sufficient in every case to make a formal affidavit; the court will enquire so far into the testimony, which the witness could give, as to satisfy themselves, that the reason assigned for a postponement is not merely colorable; and if the facts, in the present instance, are material, there can be no injury from allowing the court to hear and decide on them. There can be less occasion, likewise, for indulging such motions in ejectments, than other suits, as the judgment is not conclusive.

E. Tilghman and Mr. Lewis, in support of the motion, stated, that the cause had never yet been put off at the request of the defendant; and they urged the superior importance of viva voce testimony, as a sufficient reason for declining to take the deposition of the witness de bene esse, under the act of congress; whose provisions, in this respect, indeed, they regarded as abhorrent to the principles of natural justice.

PETERS, District Judge. If any delay had heretofore occurred by the defendant's conduct, I should have been disposed to have held him, strictly, to the performance of every thing, by which it was in his power to procure the testimony of the witness. The act of congress, however, appears to be rather harsh; and if no excuse, like the present, could be admitted, it would be declaring, in effect, that whenever witnesses resided more than 100 miles from the court, their depositions must be, indispensably, taken.

IREDELL, Circuit Justice. It is not a sufficient reason for forcing this cause to a trial, in the absence of a material witness, that the act of congress authorised his deposition to be taken. Courts of justice have always been desirous to obtain viva voce testimony, where it was practicable; and even the plaintiff himself has given a proof of his sense of its superior estimation, by bringing his witnesses for this very trial from Richmond in Virginia, though he was equally entitled to take their depositions. The testimony may be of such a nature, as not to admit of all its force being reduced to the form of a deposition. With respect to a disclosure of the facts, which depend on the testimony of the witness, we think that it is not regularly in our power to compel it; and, even if we had the power, it might be essentially wrong, in many cases, to exercise it. Nor, do I think, that, because this is a case of ejectment, the court should be less scrupulous in ordering the trial to proceed: for, it must be recollected, that the defendant is, at present, in possession of the premises, but will be evicted, if the cause is decided against him.

Upon the whole, the court cannot, perhaps, lay down a general rule, for the continuance of causes; but must, under the circumstances of each case, take care that injustice is not done, either by precipitate trials, or wanton delays. In the present instance, there appears to be a fair ground for the postponement; and, therefore, let the cause be continued.

SYMMES (BOUDINOT v.). See Case No. 1,-695.

## Case No. 13,715.
SYMONDS v. UNION INS. CO.
[See Case No. 12,875.]

## Case No. 13,716,
The SYRACUSE.
[9 Ben. 348.] [1]
District Court, E. D. New York. Feb., 1878.

MARITIME LIENS—PROCEEDS OF SALE—MORTGAGE —MERGER.

1. A vessel sold under a final decree in a proceeding in rem is sold free and clear of all incumbrance—all liens or incumbrances upon the vessel are by such a sale transferred from the vessel to the proceeds.

2. No confusion of rights arises from the fact that the purchaser at such sale is at the time owner of a mortgage upon the vessel—the mortgage is not extinguished in such a case, but becomes a charge upon the proceeds of the vessel, and the purchaser of the vessel may, upon petition, obtain payment of the amount due upon the mortgage out of such proceeds, all other claims against the vessel having been satisfied.

[In the matter of the surplus and remnants of the steamboats Syracuse, McDonald, and Ohio.]

Leroy S. Gove, for petitioner.
J. J. Allen, for owner.

BENEDICT, District Judge. The three steamboats above named, having been proceeded against in this court to enforce the payment of certain maritime liens to which they were severally subject, have heretofore been sold under decrees rendered in the actions brought by the several lien creditors. In each instance there remains in the registry of the court of the proceeds of the boat a surplus after paying all the maritime liens. In the case of the Syracuse the surplus is $3,863.64. In the case of the McDonald the surplus is $3,441.67, and in the case of the Ohio the surplus is $1,054.73. The total of these sums is the sum of $8,-360.14. The boats were all owned by the same person. In each of these cases a petition is filed by Thomas Cornell, asking that the said surplus be paid over to him on account of a chattel mortgage upon the three boats, which he claims to own, and upon which, as he asserts, the sum due is greater than the total surplus proceeds arising from all the boats.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]